I thank the panel for this opportunity to finally present some oral argument on what Plaintiff has alleged is a massive fraud perpetrated on California residents. I have five points and I see the clock ticking and as Irishmen like to talk a long time I hope they hit them all. I think as spelled out in the statement of facts of the appeal, this case was removed under the Class Action Fairness Act as a case involving potentially 60,000 consumers in the state of California with damages of more than $5 million. This case was removed then as the panel is aware. Defendants brought a motion to dismiss which there trial judge converted into a motion for summary judgment that disallowed plaintiff's opportunity to conduct any discovery at all and also restricted. What discovery does your plaintiff, Mr. Stanford, have to conduct to prove that he has some damages? Well, your honor, I think as he's alleged in the complaint. No, no, no, no, no. But what discovery? Not alleged in the complaint. Right. On 56, Rule 56, we do not credit allegations in the complaint to raise tribal issues of fact. Correct. What we have to do is to look at the proofs submitted in the trial court to see if there was a tribal issue of fact. And I'm interested principally in what damages he not alleged but said under oath that he suffered. Okay. The director is up to that. Would you please? Sure. Certainly, your honor. I think there's proof in the record to show that he suffered actual loss. What actual loss? And the actual loss was. Did he charge? Did he allege that he took a taxi cab from his home down to Home Depot to get the refund the next day and that the actual damages under the California CRLA statute should be at least a thousand dollars? Did he allege that? Did he show any proof of that? Well, I think the record shows, and I think your honor is indicated in the Walker versus City of Lakewood case, the Ninth Circuit case issued in 2001 at 272 Fed Third, 1140. I didn't know what you do with that case. No. That's okay, your honor. But in that case, as well as you just illustrated, there is a claim. You have Article 3 standing, if you can show that the plaintiff lost time and income as a result of the fraudulent act. He doesn't allege that he lost time, income, and he doesn't prove in his declarations that he lost any time or income. No. He doesn't say, I was employed at $20 an hour washing cars at Sam's Car Wash, and I had to go down to Home Depot, and I lost $20 going down, and I lost $20 coming back, and the cab ride cost me $20. He doesn't say that. That's true. His declaration doesn't say that. Under the strict confines of the district court's ruling of allowing only 10 pages of all documents, he did allege that he went and paid for the permit, paid for everything on May 29th. He had to go back to the store to demand a refund. So that is a pungent fact that he went back to the store. Did he get the refund? He did, didn't he? He did. What was the refund? $19? $19. Now, he still suffered actual loss because of this fact, because there is a misrepresentation in the advertisements that the permit is required and that that statement is misleading. I think in the facts of the case, because of this fact, had he known that Home Depot was not going to get his permit in a reasonable time, he wouldn't have paid the $93, even because he paid the $112. He was refunded the $19. He still has actual loss of $93 if they never get the permit. But they did get the permit, and they got the permit before he filed his action. Yes. Which defendant did not obtain the evidence of the permit until December 20th of 2008, submitted it to the court with no notification to the plaintiff at the time of his filing that the permit had been issued. You didn't, because the plaintiff could have gone down to the San Diego authorities and found out that he had a permit, too. He could have called them up. They're probably online. He did. It's not in the record, Your Honor, but he did call them up, and they denied that a permit was issued. Counsel, concentrate, if you would, on one question. Sure. Is there a statement in any of the declarations under penalty of perjury that Mr. Stanford lost $1 as a result of going down to get his refund, as a result of the delay in getting his permit, as a result of him not getting notification that he had a permit? Is there any allegation, pardon me, any statement in your proof prepared by you that he lost $1? Well, I think from the substance of his declaration shows that he lost time. The supposition that one loses time, I mean, time we all know is a purse that never will be refilled, right? But nonetheless, a monetary value on time has to be proven. There's some people that time is useless and worthless, right? Now, where is the statement that this man lost any wages as a result of the time he took to go down there? I concede it's not in his declaration. It's not either. Okay? But that's not the only loss that he suffered that's proven by the record. The other loss that's occurred at the time was, that was argued to the court and demonstrated by the record, is that there is a threatened impairment of his rights. Okay? Let me just take you through. Did he say that as a result of the threatened impairment of the rights, he suffered emotional distress to the point that he had to go see Dr. Wambaugh? No. It's not that, Your Honor. It's simpler, it's much more simple than that. And it's of the record. It says that, and this goes to Plaintiff's argument that reasonable time. He had a cause of action. The permit is established that the permit wasn't issued at a reasonable time. Therefore, he has standing and damage. What damage? If you give me one moment, I'll take you through it. 196 says the permits are issued on a daily Okay? The record also indicates that at page 48, that his installation was completed on May 30th. Okay? In the, at the record at page 191, the defendant's approval status report, which Plaintiff did not have an opportunity to condess the authenticity of, but that is in the record, shows that the permit, they're arguing from that document that the permit was issued in September 13th of 2007, 105 days after the installation. If you look at the record, at the frequently asked questions that were submitted by defendants at page 198, it says that Plaintiff, Plaintiff, because the permit was not issued prior to the construction, prior to the installation, it subjects him to fines and penalties. Has he paid dollar one in fines? At the time of the, at the time of standing is you look at standing at the time of the complaint. So at the time of the complaint, the, the, the installation had been legally completed for one. Not only that, the permit as demonstrated by the record had not been issued prior to the installation. It's the own document of defendants in the record of the frequently asked questions that the court took judicial notice of over plaintiff's objection that established that he has a threatened impairment at that time because of the permit wasn't issued at the time prior to the installation. It clearly states that if a required permit is not issued, is not obtained prior to construction, city codes and regulations have been violated, period. The property owner and or tenant is subject to fines and penalties and that's at the record at 198. So that establishes at the time, there's no way to cure that at the, at the moment that the installation wasn't done, he had a threatened impairment at the time that couldn't be cured. Now, of course, you know, I've argued that it wasn't legally completed. There's no facts. The only, the only facts that submitted were that the permit was issued. The record also demonstrates at 197 that all, all no plan permits are required. Let's get a couple of things straight. Number one, he never was fined, never paid a fine. Number two, he's not alleging that the threat that he would be fined caused him any significant, substantial emotional distress, which required any medical treatment or loss of time or anything else, right? Well, your honor, it's not in the record of whether or not he ever is subject to a fine. At the time of the record shows that the answer to my, both my questions. Yes. Well, he's still no, in the sense of, well, the first question is, has he ever been fined to get hit? The inspection was never completed, so he's still potentially could be fined. He has not paid dollar one in fines. True. Well, I think that's outside the scope of the record, but I don't record show that he's paid any fines at the time. Secondly, does the record show as a record show he's suffered any substantial emotional distress as a result of being subject to the fines? Well, I don't think emotional distress, your honor, I didn't make a claim for emotional distress. Fine. Okay. Emotional distress is not the only, is not the only injury that he could allege for a UCL or a CLRA claim. It's standing under article three can be achieved through an impairment, a threatened impairment of a property right. The fact that they did not issue the property right was threatened. The use of the water. Own property would be, he would be subject to fines and penalties for the use of his own property. And that's at the time. I mean, it also states that at the time filing both complaints, the inspections had not been legally completed and that's admitted. There's no, it's uncontested. It's in his declaration. No inspection was done. So the that's in the record. He still has a monetary loss of $93 at the time of filing the complaints because no inspection had been legally completed. So he didn't get the benefit of the bargain of paying for the permit fee. He wouldn't have went and paid the permit fee. The record at 197 and 198 with the frequently asked questions demonstrate you don't need Home Depot to do the fee. You don't even need your contractor to do it. He can do it by himself and ensure that it gets completed. Had Home Depot disclosed they had no, they weren't regularly issuing permits because obviously issuing a permit 105 days after installation, even under their own evidence is not reasonable. That demonstrates that they have, that he had a loss at the time. You want to save some time for rebuttal? Yes, Your Honor. I think I have a minute now. Good morning, Your Honor. May it please the Court. Robert Galsoy on behalf of Defendant Home Depot USA. Your Honor, under Lujan, it is the plaintiff's burden to plead and to prove injury in fact in other elements of Article III standing. The key question here is the one that this Court asked. Is there any statement in the record about the harm that he suffered or is there any advocacy in the record about the harm that he suffered? We've heard a lot of things this morning that we never heard before. We heard him admit for the first time that he did get the refund. As the Court indicated below, he was very coy about that below, but here he says he did get the refund. Now, the Court also asked, give me any legal authority you might have on the type of injury that you sustained. Give me any legal authority. We heard for the first time about the Walker case, at 272 F. 3rd, 114th. That's exactly the type of authority that the Court was looking for in the supplemental briefing. That's exactly the type of authority that should have been in his opening brief in this Court. Exactly the type of authority that should have been in his reply brief in this Court. As the Court said in the Washington Independent Towers case that we cite in our brief, the art of advocacy is not one of mystery, and it's especially not one of mystery when it concerns the elements of Article III standing and the burden of a plaintiff to plead from the outset the injury that he sustained. Gasway, before we get into academic disputes about the art of advocacy, can you tell me whether there is something to what Mr. Keegan was talking about as far as proof of actual damages? Here's a man who paid $93 for a permit and didn't get it for 105 days. Plus, during those 105 days, he was vulnerable to be fined by the City of San Diego because his water heater had been installed and was operational, and he didn't have a permit, an item of performance which he had contracted Home Depot should do. Why isn't the vast brooding possibility of a fine sufficient damage for Article III purposes? Because number one, Your Honor, he didn't plead it. Number two, he didn't raise it to the District Court. And number three, it wouldn't be enough in any event. Let's start with number one. He didn't plead it. The term legal completeness or fine appears nowhere in his complaint. And remember, there is a statement in there in paragraph 9 of his complaint where he actually says he never got the permit at all. By the time he filed his Second Amendment complaint, he had already been notified, as Mr. Keegan's own declaration says, a record in 43. He'd already had a conversation with counsel for Home Depot, and we told him that we had got the permit. But nonetheless, he put in paragraph 9 that he had not got the permit. And I think that's why the District Court in footnote 8 made a passing reference to rule 11. He knew or should have known that he had got the permit. Why? He could call up and ask for it. So he never put anywhere in his complaint anything about legal completeness or threat of fines. Those words or any variations of them don't appear. Now second, okay, so it's not in the complaint. The District Court recognizes that. It says tell me about your injury. Very similar to the colloquy we heard this morning. Tell me about your injury. In his supplemental brief, after he'd been put on notice to talk about what his injuries were and also as a separate request, as a specific separate request to submit legal authority, he still didn't do that. The only reference to legal completeness or anything like that you will find is on page 42 of the record. And again, what you will not find on page 42 of the record is any indication as to the legal completeness harms him. Well, you will agree, I think, that it's a bothersome situation to have to go down to the store the next day and get a refund, right? It is. Secondly, it's bothersome to have to write a letter saying I want my permit, which hasn't been issued yet. It is. And you have to get an attorney, which some people consider also bothersome. So why isn't all this bother sufficient to be Article 3 standing? Well, Your Honor, two reasons. Again, it could be if he had pled it. If he had pled it, if he had put it before the District Court. And I don't want to be technical on that, but there's a very good reason for this. Remember, this is not a case, as we heard this morning at the beginning of the hearing, where he was charged with a particularized fact. And it's not just on one permit. If it were, he might have been more forthcoming about these particularized facts, the type of facts we were talking about. I had to go down to the store. I had to miss work. I lost wages. I paid for a taxi. All of those are particularized types of facts that would later come back to haunt him when it came time to certify class action. So there's a very good reason they don't appear in the complaint. We believe there's a very good reason they don't appear in the complaint. What was the reason there? Because he would be a different – he wouldn't be an adequate representative to the rest of the class. Exactly. He was withholding those and not meeting his burden because he was worried that to the extent that he said, my injury is peculiar to me, I won't be an adequate representative. I won't have that clear, clean, common, class-wide injury that I want. So we think it was very deliberate that instead of making the sorts of statements that were made from the podium today for the first time, that they were never made in the district court. But I also want to not merely stand on that, which is adequate in and of itself. But remember, we did submit a Rule 28J letter citing the humanitarian law project. And the humanitarian law project case we cited specifically because we wondered whether he would make concrete in this court what he left as a mystery in the court below. Namely, what was his harm? And to the extent that he's talking about a fear of enforcement as his harm, the humanitarian law project case makes clear that that has to be a reasonable fear of enforcement. It can't just be a fear of enforcement. The humanitarian law project in that case alleged violations of core constitutional rights. It was assisting organizations that had been described officially as terrorist organizations. And it says, we're worried. We're advocates here. We're worried that we're going to get caught up in enforcement action here. And this court, just recently in the case we cited in our 28J letter, said, no, a worry of prosecution isn't enough. You have to tell us exactly why you're afraid of being prosecuted. Now, if the theory that had come out this morning had come out below, we could have explored that. We could have explored for the district court exactly how rational that fear of prosecution was. We could have seen whether it came within the humanitarian case. Counsel, Judge Gould with a question. I'll just say, from my perspective, as only one member of the panel, I'm more interested in what is in the record. You know, what are the total facts before us now in the record than about whether, you know, the counsel didn't disclose them earlier or arguably should have. In terms of Article 3 standing, I think it's primarily a question for us, just what's in the record now. And the other thing of concern to me that you might want to address, and I apologize, I can't remember the name of this case, but I know I was on a panel where we had a class action involving some type of cell phone charge that was put on a bill. And as soon as the customer called the phone company, they gave a credit. But still, there was an allegation that this was a common practice and an attempt to get recovery of damages for the time spent to make a simple phone call and get a credit, which, of course, is probably less time than was involved here to go to the store to get a refund. Now, I can understand if there's something that's not pleaded, that may be a sufficient answer. But is it also possible that if we thought something was cognizable harm for Article 3 standing, but wasn't pleaded, that we should remand and permit the plaintiff to amend their complaint? Your Honor, let me address those. First, with respect to the case, I don't have that case, but I have another one. And then I'll talk about the state of the record and why a remand, I don't think, is in order here. First of all, I don't know the case. I'm sorry, Your Honor, that you're talking about. The case that I... Well, you don't have to apologize. I don't know it either. I'm just sure there are a lot of cases like this because it's a not infrequent type of approach in class actions. Let me try to talk about the case, and then the record, and then the remand. The case that I know that you're on the panel on, that we rely on heavily, and it was block quoted by the district court, is the Learbo case. And that was a class action case. That was the Montana stacking of coverage case, Your Honor. And what Your Honor said in that case is because this is not a mootness case, because this is not a mootness case, we remand with instructions to dismiss. Now, Learbo has been the law of the circuit and has been followed in the Blackwell versus SkyWest case and also in the Stanford per member works case. It is the black letter law of this circuit that if you don't have standing from the outset, you don't intervene other plaintiffs, you just dismiss. Now, there are cases, Your Honor, and one of them that you might be thinking of is as a cell phone case, we cited in the 28-J letter, which is the Smith versus T-Mobile. And in that case, there is no argument that satisfaction was given after the complaint was filed. We also cited the Briggs case involving finance charges in our brief. And again, satisfaction after the complaint was filed. And still in those two cases, this court and a trial court said, no, you still don't let the case go forward. So there is a bright line rule in this circuit that if you don't have standing on day one in a class action, you dismiss under Learbo and its progeny in the district courts. Now, you asked, what is the evidence of harm in the record? And the answer is, Your Honor, after repeated attempts again and again to elicit that evidence, there is no evidence of that harm in the record. He was never forthcoming. He never put forth that evidence. He just has a summary reference to legal completeness. But legal completeness is like saying a violation of the First Amendment. He never says how he was harmed. He never says what he said today. I feared prosecution, or I couldn't sell my house, or other things, even after he was asked to. And this case comes down, Your Honors, I would submit to a judicial management case, the ability of courts in this circuit to manage their docket. The district court in this case looked the plaintiff in the eye and said, please tell me your injury. Tell me your injury. Tell me what discovery you need for your injury. And, Your Honors, I think it's telling that even after being looked in the eye and asking for supplemental briefing, he never asked for discovery, although he says it in his reply brief. He says that he asked for discovery on injury or legal completeness. His actual request for discovery had nothing to do with injury, had nothing to do with legal completeness. And that's contrary to this Court's decision in the Tatum case that says you have to have an affidavit that points to specific facts and explains why those specific facts are necessary and would preclude summary judgment. And if you remand this case, you're effectively overruling the Tatum case, which says it's your burden to come forward. It's your burden, if you are threatened with summary judgment, to come forward and, quote, identify specific facts. Can't we, Mr. Gassoy, can't we imply from certain facts that are shown in the affidavits of plaintiff that he did suffer some legally cognizable damages inasmuch as he was required to go down to the store the next day, he had to take some time away from whatever other of going to perhaps the Breeders' Cup and watching the horses race. He had to do something else that was not as pleasant. Isn't that sufficient to allow the conclusion that some even nominal damages should be awarded? Your Honor, I would submit not in the absence of pointing to them and identifying them when specifically asked. When specifically asked, what is your injury? You know, we've got two completely different theories here, right? We've got fear of prosecution and we've got shoe leather costs, as economists call them. And we're sort of saying here, did he fear prosecution on the one hand or did he worry about shoe leather costs on the other? Which of those are cognizable under which of his theories? Under breach of contract, under consumer legal revenues, under 17200, under good faith and fair dealing. Which of those very, very different theories are cognizable or not cognizable? And again, Lujan says that you have to come forward at every stage of the hearing and you have to plead injury in fact. You don't have to have a long pleading, you just have to say shoe leather costs or you just have to say fear of prosecution. And there's a very good reason for that, especially in a class action, Your Honor, because one of the key criteria of a class action is whether the particular plaintiff is going to be an adequate representative and whether they're going to have a common claim with the rest of the class. Your point is if he only claims fear of prosecution, that may not be something which the other class members share and he wouldn't be an adequate representative for their claims. Exactly. And he should be put to that test at the outset, specifically under Tatum, where he was told this was summary judgment. And the Tatum standard, again, says you have to point, identify specific facts by affidavit and say why they matter. And I would point this Court to page 44 of the record. I think it's so telling that he says the problem here was that I didn't get discovery. But look at the discovery that he asked for on page 44 of the record. All documents reflecting steps taken by Home Depot to obtain any required permits, rates for permits, policies for permits, iteration of advertising for permits, names and address of class members, nothing about Richard Stanford. He never asked for discovery, any discovery about Richard Stanford. You're over your time, counsel. Thank you very much. You're very welcome, Your Honor. Mr. Keegan. I think by this time you know what we're interested in. Yes. I think so, Your Honor. I think I know just Judge Gould's comment. I think it could be one of two cases involving cell phones. There's a Ninth Circuit case called Lorenzo v. AT&T Wireless Services. It's cited at 504 Fed 3rd at 718 and I think at 733 sort of discusses those allegations. It could also be the California Appellate Court decision called Morgan v. AT&T Wireless Services found at 177 Cal App 4th, 1235 and I think a couple of it. Yeah. Counsel, you don't have to try to find my case. I can find it later. And it's really that important. I think I dissented. So, you know, my view wasn't presidential. Maybe Judge Baer would give you an extra 30 seconds because you fused up your reply time. I'm trying to find my case. I'll show you how generous we feel. You got a minute. Yeah. Okay. Thank you, Your Honor. Thank you, Your Honor. I think also as reflected in your comments that the record at page 221 shows that Dick Stanford had to hire an attorney to pursue to get his permit issued and it wasn't issued. And I strongly suggest at the record if you look at the complaint itself from just for instance at the record at 219 to 220 and also at which is paragraph 22 and as well as paragraph 33 of the complaint, I made allegations in the complaint that said that plaintiffs, plaintiff and class members have suffered damage because one of three events. Permits were never obtained. Permits weren't reasonably obtained in a reasonable time, which is exactly the facts that we presented. Or three, they were never required by the applicable municipal government. And in the request for complaint, we are now affirming or reversing a summary judgment. The question is what was in the sworn declarations as to any of those three was a dollar figure ever put on any of them. No, I agree with you. I agree with you. The dollar figure wasn't there. I was just addressing his point that could we, if given leave to plead, I asked for leave for amend to re-plead the complaint. I believe I pled it. I believe there's facts in the complaint that justifies it. You pleaded to re-plead in district court once, weren't you? No, I was not. I was not. Didn't the district court, as Mr. Gassway indicated, look you in the eye and say, have you been hurt? Well, for one, there was no oral argument, so nobody looked me in the eye. But two, I was denied, I specifically requested and I was denied leave to amend. Okay. Thank you very much. Thank you, Your Honor. All right. As indicated before, we're going to take a 15-minute break. All rise. The court stands in recess for 15 minutes. Bluford v. Home Depot. Remarks submitted.
judges: Hart, Gould, Bea